UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SYRUS HAMPTON,<br><br>        Defendant. | Criminal No. 19-10146-IT |

**GOVERNMENT'S SENTENCING MEMORANDUM**

After he sped away from police in the middle of a routine traffic stop for a car lights violation in January 2019, defendant Syrus Hampton jumped out of his still-running minivan and fled, causing it to run over a police officer's foot and crash into two other cars, including one occupied by a pregnant woman and her children. After initially ignoring police orders to stop as he ran away, Hampton finally complied with police orders to drop his bag after he tripped and fell down. Police observed a gun sticking out of his bag and seized it. The gun turned out to be an Uzi-style machinegun firearm that had been made from a kit, with no serial number, which was accordingly untraceable. It was loaded with an extended magazine containing 20 rounds of ammunition and a bullet in the chamber, far more ammunition than necessary for personal protection. Hampton has pleaded guilty to being a felon in possession of ammunition. This is the defendant's third conviction for unlawful possession of a firearm or ammunition. His conduct both posed significant danger to the public and caused actual harm, and it demonstrates the utter disregard the defendant had for the law and safety of the community at the time of the incident.

Since that time, Hampton has made significant strides to improve himself. The terms of his supervised release were relaxed over time, and, after some hiccups, he eventually started using that time productively, including by obtaining employment to help support his children, for whom he owes significant child support. PSR ¶ 64. In RISE, he completed four out of five High School Equivalency Test classes; maintained employment; completed CBT programs; and graduated the Nurturing Father's program. And he gained insight through the District's Restorative Justice program into how his actions have a ripple effect on those around him. Of course, the true test of what Hampton has learned through RISE and Restorative Justice will be how he lives his life from here on out.

Having considered both the seriousness of Hampton's conduct here, as well as the mitigating information provided in the PSR and the significant strides he has made since committing this offense, the government recommends a sentence of 42 months in prison – representing a 40% downward variance from the low end of the guidelines – followed by 3 years of supervised release.

## BACKGROUND

On May 19, 2015, Hampton was convicted in the Boston Municipal Court – West Roxbury Division of carrying a firearm without a license in violation of MGL c. 269, s. 10(a), a crime punishable by a term of imprisonment exceeding one year. PSR ¶ 10. He was sentenced to 18 months imprisonment. PSR ¶ 11.

As of January 25, 2019, Hampton was considered an active member of the Crown Path gang by the Boston Police Department, although the records of his gang activity were somewhat dated. PSR ¶ 12.

At approximately 9:36pm on January 25, 2019, in the Dorchester area of Boston, Boston Police Department Officers Kennedy and Nemes, and Boston Housing Authority Officer Keller, saw a charcoal gray 2018 Dodge minivan displaying Ohio Reg. FZB5983 operating without its taillights on in violation of Massachusetts law. Based on this violation, they activated their blue lights and effected a traffic stop of the minivan. PSR ¶ 13.

During the traffic stop, officers learned that Hampton's license to operate a motor vehicle had been suspended. Accordingly, officers told Hampton that he would need to exit the vehicle. Hampton did not comply, but instead put the vehicle into drive and drove away at a high rate of speed. Officer Nemes chased the minivan on foot, while Officers Kennedy and Keller followed in the cruiser. PSR ¶ 14.

Hampton's minivan came to a stop behind other stopped traffic on Bishop Joe L. Smith Way at the intersection with Geneva Avenue. At that point, Hampton opened his driver's side door and fled on foot, clutching a black bag that had been on the passenger seat next to him. While Officers Kennedy and Nemes chased Hampton on foot, Officer Keller observed that Hampton's minivan had not been placed into park before he ran out of the minivan, and it was moving unoccupied down Bishop Joe L. Smith Way towards stopped traffic. Officer Keller ran to the minivan and tried to stop it as it struck a vehicle occupied by a pregnant woman and her two young children, ages 6 and 3; in the process, he fell and his foot was run over by Hampton's minivan. Hampton's minivan then continued to travel unoccupied down Bishop Joe L. Smith Way, ultimately stopping after striking a parked vehicle, causing bumper damage. PSR ¶ 15.

Meanwhile, Officer Kennedy chased Hampton on foot down Geneva Avenue and into a vacant lot. As Hampton entered the lot, he turned to face Officer Kennedy, running backwards and reaching into the black bag. He then tripped and fell to the ground. As Hampton got up,

Officer Kennedy drew his department-issued firearm and ordered Hampton to show his hands. Hampton did not initially comply, but then threw the backpack down and began walking towards Officer Kennedy. Officer Kennedy re-holstered his firearm and attempted to place Hampton's hands in handcuffs behind his back. Officer Nemes arrived and aided Officer Kennedy in bringing Hampton to the ground, and additional backup arrived to assist in handcuffing Hampton. Officer Nemes's knee was injured during this arrest. PSR ¶ 16.

After Hampton's arrest, officers walked over to where Hampton had dropped the black bag and observed what appeared to be the handle of a firearm inside the partially-open bag. Detectives recovered the firearm from the backpack and discovered it to be a Cobray M-11 Uzi-style firearm with no serial number, with a 30-round magazine inserted in it. The magazine contained 20 rounds of 9mm ammunition, and there was one additional round in the chamber of the firearm, for a total of 21 rounds. ATF analysis determined that all 21 rounds of ammunition had been manufactured outside of Massachusetts. PSR ¶ 17.

Examination of the firearm by the Firearms Technology Criminal Branch ("FTCB") of ATF determined that the firearm had no serial number; the firearm was likely built from a kit or from parts; and that it was designed to function and in fact did function – albeit inconsistently – in fully automatic mode such that it qualified as a "machinegun" for purposes of 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b), and also a "firearm" as defined in 26 U.S.C. § 5845(a)(6). PSR ¶ 18.

## DISCUSSION

### I. Sentencing Guideline Calculation

While the U.S. Sentencing Guidelines ("USSG") are advisory and not mandatory, *United States v. Booker,* 543 U.S. 220 (2005), the First Circuit has made clear that "the guidelines still

play an important role in the sentencing procedure, so that [ ] a court should ordinarily begin by calculating the applicable guideline range." *United States v. Gilman*, 478 F.3d 440, 445 (1st Cir. 2007).

Probation applied a base offense level of 22 because the offense involved a semiautomatic firearm capable of accepting a large capacity magazine and committed the offense after sustaining a felony conviction for a controlled substance offense.  USSG § 2K2.1(a)(3).  Probation applied an enhancement for obstruction of justice, because the defendant recklessly created a substantial risk of serious bodily injury to others in the course of fleeing from Boston Police.  USSG § 3C1.2. After a three-level reduction for prompt acceptance of responsibility, USSG § 3E1.1(a) and (b), Hampton's total offense level is 21.  Based on a total offense level of 21 and criminal history category of V, Probation has calculated the GSR in this case to include a term of incarceration from 70 to 87 months, to be followed by a term of supervised release of one to three years.  The government concurs with Probation's determination of the GSR.

## II. Application of the Section 3553(a) Factors

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).  These factors include the nature and circumstances of the offenses and the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.  They also require courts to consider the kinds of sentences available and the GSR.  In this case, these

factors point to a sentence of imprisonment of 42 months, and to three years of supervised release.

  A. **Nature and Circumstances of the Offense; Need for Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment and Deterrence, and Protect the Public**

In analyzing the "nature and circumstances of the offense" in this case, the Court should consider the circumstances of the defendant's arrest. He was armed with a loaded machingun with a bullet in the chamber and 20 more in the extended magazine as he abandoned his car in gear and ran away from police through sidewalks and streets of Boston, causing injuries.

One need look no further than the daily newspaper to see the danger that illegal firearms pose in the streets of Boston. In 2020, there were 274 shooting victims in Boston; in 2021, there were 198; the five-year average is 230.8 shooting victims per year. *See* BPD Crime Data, https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/61d7308e3e9b031b58d8bc5c/1641492622410/Pages+from+Weekly+Crime+Overview_+2021+Year+End-2.pdf (last accessed September 16, 2022). Against this backdrop, it is important to send a message that gun crime cannot be tolerated, particularly from people who have already been convicted of such crimes before. *See United States v. Laury*, 985 F.2d 1293, 1310 (5th Cir. 1993) (repeated convictions displayed tendency towards recidivism that warranted more serious sentence); *United States v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007) (imposing above guidelines sentence where it was obvious that prior incarceration "was obviously not sufficient to comply with the purposes of § 3553(a)(2)").

Moreover, here, in addition to the danger posed by the defendant's driving around Boston armed with a loaded homemade machinegun, the defendant's actions after being pulled over

resulted in actual physical harm to a police officer whose foot was run over, who was taken to the hospital, and who was out of work on medical leave for a period thereafter.

A 42-month sentence of imprisonment, followed by three years of supervised release, is sufficient, but not greater than necessary, to reflect the serious circumstances of this offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant. This sentence would represent a 24-month increase from his last sentence for the same crime – a substantial, but reasonable, increase. The government notes that Hampton was sentenced to 18 months in the House of Corrections for his 2011 conviction of possession of firearm, and again sentenced to 18 months for his 2015 conviction of possession of a firearm. These sentences were not effective at deterring Hampton from committing the same offense here, and the government believes that a significant increase is appropriate under the circumstances.

### B. The History and Characteristics of the Defendant

The government acknowledges certain points that are reflected in the PSR. The defendant had a difficult childhood, being raised by his grandmother due to his mother's drug addiction, losing his grandmother at the age of 13, and suffering from neglect as well as physical and verbal abuse. PSR ¶¶ 54-56. He lost stability when he was asked to leave his high school, and he became a father as a teenager. PSR ¶ 57. This background provides context for, though it does not excuse, the conduct here; the government has factored this background in, in recommending a downward variance.

The government also recognizes the positive strides that the defendant made while in the RISE program, including completing four out of five High School Equivalency Test classes; maintaining employment; completing CBT programs; graduating the Nurturing Father's

program; and participating in the District's Restorative Justice program. The government recognizes in particular the work Hampton has done to become a better father to his children and is cognizant of the effect a lengthy period of incarceration would have on them. The defendant is to be commended for his achievements while on pretrial release, and the government has given him credit for them in recommending a downward variance.

However, the government's recommendation must also consider other, less sympathetic personal characteristics. Hampton's adult record reflects several convictions for serious crimes. As a young man, armed with a knife, he robbed a victim. PSR ¶ 35. On two subsequent occasions, he was found in possession of a firearm and ammunition, and on the second occasion also possessed 15 baggies of crack cocaine and heroin. PSR ¶¶ 37-38. Then, of course, he was convicted of similar conduct in connection with the offense here, the specifics of which are set forth in detail above. These factors point toward the need for a sentence that promotes respect for the law. *See United States v. Schmude*, 901 F.2d 555, 559 (7th Cir. 1990) ("[r]ationally, if a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing that same crime again-greater sanctions than might be required for a defendant who has never been convicted of a similar offense.").

Altogether, the history and characteristics of the defendant, balanced against the seriousness of the offense and the other § 3553(a) factors, point to a sentence of 42 months, as well as three years of supervised release. The supervised release component of Hampton's sentence will be particularly important to provide Hampton support and direction after completing his sentence; he has demonstrated an ability to make good use of the resources Probation has to offer, and this period of Supervised Release will help him to build on what he has learned and achieved in the RISE and Restorative Justice programs.

**CONCLUSION**

A sentence of 42 months incarceration, along with 3 years of supervised release, is necessary in this case to reflect the seriousness of the offense of conviction, to promote respect for the law, to adequately punish Hampton for his criminal conduct, to deter him and others from offending in the same way again, and to protect the public. For the foregoing reasons, and those to be articulated at the sentencing hearing, the government respectfully recommends that this Court this sentence, as well as the required special assessment. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
617.748.3100

Dated: September 16, 2022

**CERTIFICATE OF SERVICE**

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney

Dated: September 16, 2022